## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AXIS CONSTRUCTION CORP. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | NO. 02-cv-3017 |
| LANDMARK BUILDING SYSTEMS, INC., | : | |
| et al. | : | |
| Defendants | : | |

## O R D E R

AND NOW, this          day of                              , 2003, upon

consideration of the Motion of Defendant, Landmark Building Systems, Inc., for

Summary Judgment and the response of Defendant, Axis Construction Corp. thereto, it is

hereby ORDERED and DECREED that said Motion be and hereby is GRANTED and

that Plaintiff's Complaint is DISMISSED in accordance with 15 Pa. C.S. § 4141 for

Plaintiff's lack of capacity to sue in this forum.


BY THE COURT:


_____
Berle M. Schiller, U.S.D.J.

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AXIS CONSTRUCTION CORP.                    : CIVIL ACTION
                              Plaintiff    :
                                           :
              v.                           :
                                           : NO. 02-cv-3017
LANDMARK BUILDING SYSTEMS, INC.,           :
et al.                                     :
                              Defendants   :

## O R D E R

AND NOW, this        day of                          , 2003, upon

consideration of the Motion for Summary Judgment filed by Defendant, Landmark

Building Systems, Inc., and the response of Plaintiff, Axis Construction Corp., thereto, it

appearing that there are no genuine issues of material fact which could establish liability

as to various Counts of the Plaintiff's Complaint, it is hereby ORDERED and DECREED

that said Motion be and hereby is GRANTED and that Counts I, II, III, IV, V, VII and

VIII of the Plaintiff's Complaint are DISMISSED with prejudice.  A Bench Trial on

Plaintiff's claim in Count VI for breach of subcontract and on Defendant's counterclaim

shall proceed as of April 17, 2003 in accordance with this Court's most recent Scheduling

Order.

2

BY THE COURT:

_____

Berle M. Schiller, U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AXIS CONSTRUCTION CORP.      : CIVIL ACTION
                Plaintiff   :
          v.           :
                     : NO. 02-cv-3017
LANDMARK BUILDING SYSTEMS, INC.,  :
et al.                  :
              Defendants :

## MOTION OF DEFENDANT, LANDMARK BUILDING SYSTEMS, INC., FOR SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT

Defendant, Landmark Building Systems, Inc. ("Landmark"), hereby moves this Court for entry of Summary Judgment on the Complaint of Plaintiff, Axis Construction Corp. ("Axis"), on the grounds set forth below.

## I.    INTRODUCTION

1.    Axis Construction Corp. is a New York corporation which was a general contractor to Plainedge Union Free School District on a contract to provide and install modular classroom buildings (the "Plainedge Project") which it purchased pursuant to a subcontract which it awarded to Landmark in July, 2001.

2.    Axis had entered into two previous subcontracts with Landmark to supply modular buildings for two construction projects in New York for the Yonkers Public School District and for Winthrop University Hospital.

4

3.     Axis had withheld substantial sums from Landmark for the work which was performed and completed by Landmark for the two previous projects at the time it awarded Landmark the Plainedge subcontract.

4.     By November, 2001, Axis also owed Landmark substantial sums for the work it performed for Axis for the Plainedge project as well which caused Landmark to demand adequate assurances that Axis would fulfill its payment obligations to Landmark for all three projects.

5.     As a result of that demand, on December 18, 2001 Axis and Landmark entered into an escrow settlement agreement under which a total of $310,000.00 was to be paid by Axis to Landmark, $150,000.00 of which was to be placed in an escrow account for distribution to Landmark upon completion of various tasks on the Yonkers and Plainedge Schools projects.  See Exhibit 8 of Defendant's Appendix to Summary Judgment Motion.

6.     Although $160,000.00 was promptly disbursed to Landmark by Axis following that agreement, only one month later on January 18, 2002, before Landmark could even complete its work on the Plainedge Project, Axis commenced its initial suit against Landmark, et al., at Civil Action No. 02-CV-317 seeking to set aside the escrow settlement agreement and to compel the return of the proceeds thereof under various theories of fraud, unjust enrichment, etc.  See Exhibit 10 of Defendant's Appendix to Summary Judgment Motion.

7.     Axis failed to serve or to even give notice to Landmark of the filing of that suit which was eventually dismissed without prejudice for lack of prosecution, immediately following which Axis re-filed its Complaint in this Civil Action at No. 02-CV-3017.

8.     Axis' Complaint asserts claims against Landmark, its Vice President, Douglas George and the escrow agents appointed under the Escrow Settlement Agreement for the following claims:

| | |
|---|---|
| Count I | Fraud |
| Count II | Breach of Letter Agreement |
| Count III | Declaratory Judgment of Right to Funds in Escrow Account |
| Count IV | Unjust Enrichment |
| Count V | Constructive Trust |
| Count VI | Breach of Landmark Subcontract |
| Count VII | Breach of Yonkers' Subcontract |
| Count VIII | Breach of Implied Covenant of Good Faith and Fair Dealing |

9.     Landmark has moved this Court for Summary Judgment, in whole or in part, on Axis' Complaint for Axis' lack of capacity to bring suit against Landmark in this jurisdiction or, if Axis' Complaint is not dismissed in its entirety, for Summary Judgment on all Counts other than Count VI for breach of Landmark's subcontract based upon the

lack of any genuine issue of material fact concerning Axis' claims set forth in those Counts.

## II.    AXIS' LACK OF CAPACITY TO SUE

10.    As averred in Axis' Complaint, Axis is a New York Corporation which commenced this action in the United States District Court for the Eastern District of Pennsylvania against Landmark, a Pennsylvania Corporation, based upon diversity of citizenship.  See confirmation of Axis Entity Information from New York Department of State at Exhibit 13 of Appendix to Defendant's Motion for Summary Judgment.

11.    As evidenced by the Affidavit of Douglas George (Exhibit 1 of Appendix to Defendant's Summary Judgment Motion), Axis has regularly conducted business in this jurisdiction by the award of several subcontracts which totaled in excess of $4,000,000.00 to Landmark to provide modular buildings for its construction projects over a two year period as follows:

| Project | Award Date | Subcontract Amount |
| --- | --- | --- |
| Yonkers School District | 1/24/00 | $1,957,544.00 |
| Winthrop Hospital | 9/00 | $  510,508.00 |
| Plainedge Elementary Schools | 7/17/01 | $1,852,891.00 |

12.    Under the Pennsylvania Business Corporation Law, 15 Pa. C.S. § 4141, a foreign business corporation doing business in the Commonwealth of Pennsylvania which fails to register to do business in this forum shall not be permitted to maintain any action or proceeding in any Court of this Commonwealth.

13.    Review of the public record of filings made with the Pennsylvania Department of State indicates that Axis has never filed, registered or obtained a certificate of authority to do business as a foreign corporation in the Commonwealth of Pennsylvania.

14.    As a result, Axis is barred from filing and prosecuting this suit against Landmark in any State or Federal Court within the Commonwealth of Pennsylvania. Aberle Hosiery v. American Arbitration Association, 337 F. Supp. 90 (E.D. Pa. 1972).

## III.    CLAIM FOR FRAUD AGAINST DOUGLAS GEORGE INDIVIDUALLY

15.    Count I of Axis' Complaint names Douglas George, Vice President of Construction for Landmark, for personal liability for "fraud" for executing a payment application and several lien waivers containing certifications that payments had been made to Landmark's subcontractors and suppliers, which documents are attached as Exhibits A, B and D to Axis' Complaint.

16.    The Exhibits attached to Axis' Complaint, however, indicate that they were signed by Douglas George acting in his capacity as Vice President of Construction on behalf of Landmark.

17.    Indeed, both Paragraphs 34 and 36 of Axis' Complaint aver that Douglas George was "acting within the scope of his employment as Vice President for Landmark Building Systems, Inc.," at the time he signed those payment certifications.

18.    Axis has not and cannot produce any evidence which would raise any issue of genuine material fact to be decided by this Court at trial that Douglas George acted in any manner other than in the course of his employment as a Vice President of Landmark.

19.    Douglas George was not personally liable for acts performed in the scope of his employment and on behalf of his employer, Landmark.  There is therefore no basis on which the Court would hold Douglas George liable personally for fraud under Count I of Axis' Complaint.

IV.    **LACK OF PROOF OF THE ELEMENTS OF FRAUD**

20.    Count I of Axis' Complaint asserts liability against Landmark for alleged "fraud" by inducing Axis to enter into the escrow settlement agreement based upon supposed misrepresentations concerning Landmark's payment certifications.

21.    Axis has not and cannot produce evidence to establish the required elements to impose liability against Landmark for "fraud" as follows:

(a).     There is no evidence that the statements made for those payment certifications were untrue;

(b).     There is no evidence of any detrimental reliance by Axis in entering into the escrow settlement agreement as a result of any alleged misrepresentations in Landmark's payment certification;

(c).     There is no evidence that Axis has incurred any cognizable damages as a result of any alleged detrimental reliance upon misrepresentations made in Landmark's payment certifications.

22.     As Axis is unable to present evidence necessary to prove the elements required to establish liability for "fraud", this Court should enter summary judgment by dismissing Count I of Axis' Complaint against Landmark.

## IV.   LACK OF EVIDENCE TO SUPPORT LIABILITY ON COUNTS II, III, IV, V, VII AND VIII OF AXIS' COMPLAINT

23.     In addition to its fraud claim in Count I and its breach of subcontract claim in Count VI, Axis' Complaint asserts a panoply of legal theories which are all intended to achieve the same relief which are sought by its tort and contract claims. The allegations in those Counts are both unsupported by any evidence and are unnecessary and add nothing to the claims for relief which Axis has asserted against Landmark in this matter.

24.     To wit, Count II avers that Landmark breached the escrow and settlement agreement by failing to pay its subcontract such that Axis is faced with potential lien claims of not less than $240,000.00.

25.     That allegation is patently untrue; all of Landmark's subcontractors have been paid in full (See Exhibit 1 of Appendix to Defendant's Summary Judgment Motion), with the exception of Town Supply and Pioneer Windows; Pioneer Windows has entered into a settlement agreement under which its claims are to be discharged (Exhibit 12 of Appendix to Defendant's Motion for Summary Judgment) and the balance to be held in the escrow account is sufficient to satisfy the claim of Town Supply for which Landmark is required to provide a waiver of liens in order to satisfy the terms of the escrow settlement agreement (Exhibit 8 of Appendix to Defendant's Motion for Summary Judgment).

26.     Count III seeks a declaratory judgment for the return of $150,000.00 in the escrow fund; on the contrary, all but about $20,000.00 of that fund has been or will be disbursed pursuant to agreements that have been negotiated between Axis, Landmark and the Landmark's subcontractors which are Third Party Defendants in this case.  The parties have or will stipulate that the balance is to be released to Town Supply in the event that Landmark is successful in defending Axis' claims in this case.

11

27.    Count IV falsely claims that Landmark has been unjustly enriched based upon the false allegation that Landmark has failed to pay over $240,000.00 to its subcontractors on this project.

28.    Count V falsely claims that a constructive trust should be imposed on property held by Landmark based upon the false allegation that Landmark has failed to pay over $240,000.00 to its subcontractors.

29.    Count VII falsely claims that Axis is owed damages for work performed on Landmark's behalf on the Yonkers' project which has been settled under the Hummer Settlement Agreement.  (See Exhibit 11 of Defendant's Appendix to Summary Judgment Motion).

30.    Count VIII of Axis' Complaint falsely claims that Landmark breached its duty of good faith and fair dealing based upon alleged misrepresentations made in the payment applications and lien waivers which are the subject of Count I and by failing to provide additional lien waivers for plumbing, HVAC, roofing and steel.  See Exhibit 1 of Appendix to Defendant's Summary Judgment Motion.

31.    On the contrary, as set forth above, Landmark has paid all of its subcontractors and provided all of the lien waivers required by the Escrow Settlement Agreement, other than from Pioneer Windows which has settled its claims in this case and Town Supply which is to be paid $18,000.00 upon the release of the balance of escrow

funds.  See Affidavit of Douglas George, Exhibit 1 of Appendix to Defendant's Motion for Summary Judgment).

32.    Furthermore, Axis is unable to demonstrate that it incurred any damages for Counts II, III, IV, V, VII and VIII, which claims are derivative of Axis' alleged claims in tort for alleged fraud and for alleged breach of Landmark's subcontract with Axis.

## V.    CONCLUSION

33.    Therefore, if Axis' Complaint is not dismissed in its entirety based upon the lack of its capacity to bring suit against Landmark in this matter, then this Court should dismiss all Counts of Axis' Complaint for lack of any genuine issue of material fact, with the exception of Count VI on which issues of fact exist which must be decided by this Court following a trial.

WHEREFORE, Defendant, Landmark Building Systems, Inc., hereby moves this Court for summary judgment for dismissal of Plaintiff's Complaint in its entirety for lack of capacity to sue or, in the alternative, partial summary judgment on all Counts of Plaintiff's Complaint other than Count VI.

13

FRANCIS X. CLARK, P.C.

DATE:


By:_____

   Francis X. Clark

987 Old Eagle School Road, Suite 705
Wayne, PA 19087
610-225-2372

Attorneys for Defendants,
Landmark Building Systems, Inc. and
Douglas George

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


AXIS CONSTRUCTION CORP.        : CIVIL ACTION
                           Plaintiff  :
                v.               :
                                : NO. 02-cv-3017
LANDMARK BUILDING SYSTEMS, INC.,  :
et al.                               :
                      Defendants  :

**MEMORANDUM OF LAW OF DEFENDANT,
LANDMARK BUILDING SYSTEMS, INC., IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**


**I.    INTRODUCTION**


Plaintiff, Axis Construction Corp. ("Axis") originally brought this action against

Landmark Building Systems, Inc. ("Landmark") and Douglas George individually to set

aside the terms and conditions of the escrow settlement agreement it entered into with

Landmark only one month after it made that agreement.  That suit was brought before the

project was even completed and since then there have been a series of modifications to

the parties' agreement since the suit was filed which render the majority of the claims in

Axis' Complaint moot.

Ostensibly, Axis argues that it should be allowed to disregard the agreement it

made with Landmark based upon allegations of supposed "fraud" by Landmark and

Douglas George (Count I); breach of the Escrow Settlement Agreement (Count II); a

15

declaratory judgment that Axis is entitled to the escrow funds (Count III); that Landmark has been unjustly enriched (Count IV); that the Court should impose a constructive trust on the funds (Count V); that Landmark has breached its subcontract with Axis (Count VI); that Landmark has breached its subcontract with Axis on the Yonkers School Project (Count VII); and that Landmark has breached its duty of good faith and fair dealing to Axis (Count VIII).

All of those claims, however, are premised on the incorrect allegation that Landmark has somehow failed to make payment to its suppliers and subcontractors on the Yonkers and Plainedge projects, contrary to its previous payment certification through December 18, 2001, and thereby created potential liability to Axis for sums in excess of $240,000.00 (Axis Complaint at par. 23-26; par. 48; par. 60-62; and par. 65-66). Axis' Complaint also fails to acknowledge that settlement agreements have been reached with all of the Third Party Defendants which Axis alleges have not been paid, that all claims concerning Yonkers School District and Hummer have been settled (Exhibit 11 to Appendix to Defendant's Motion for Summary Judgment ) and that sufficient funds remain in the escrow account to pay Town Supply which is the only remaining condition to completion and fulfillment of the terms and conditions of the escrow settlement agreement. Finally, Axis fails to note that it lacks any standing to bring this suit against Landmark in the Commonwealth of Pennsylvania as a result of the fact that it has failed

to file for a Certificate of Authority as a foreign corporation doing business in the Commonwealth of Pennsylvania.

Axis' claims against Landmark, therefore, are limited only to its questionable claims for reimbursement for "backcharges" for costs and claims it expended for work which Landmark was required to perform under its subcontract. See Count VI of Axis' Complaint. Those claims have nothing to do with Axis' allegations of fraud based upon payment certifications or otherwise since Axis supposedly knew it was performing work which it intended to charge to Landmark when the work was performed and did not do so in reliance upon any lien waivers or the Escrow Settlement Agreement. Landmark has denied liability for any of those costs and asserted a counterclaim for reimbursement of its additional expenses and the release of the balance in the escrow account, which amount will only be about $20,000.00 after the Pioneer settlement has been completed. That amount is sufficient to pay Town Supply the agreed sum of $18,000.00 in order to obtain the only remaining waiver of liens which Axis requires from Landmark's subcontractors in accordance with the Escrow Settlement Agreement.

Landmark therefore requests that this Court grant its Summary Judgment Motion by either dismissing Axis' Complaint in its entirety or, otherwise, as to all Counts of Axis' Complaint with the exception of Count VI.

17

## II.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Judge Padova of this Court, in the case of <u>Amoco Oil Co. V. McMahon</u>, 1997

Westlaw 50448 (E.D. Pa. 1997), aptly set forth the criteria for this Court's determination

of summary judgment under Rule 56 of the Federal Rules of Civil Procedure as follows:

> F.R. Civ. P. 56(c) provides that Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  F.R. Civ. P. 56(c) at issue is "genuine" continue only if there is sufficient evidence with which a reasonable jury could find for the non-moving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 202 (1986).  Furthermore, bearing in mind that all uncertainties are to be resolved in favor of the non-moving party, a factual dispute is only "material" if it might affect the outcome of the case.  <u>Id.</u>  A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 265 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial <u>Celotex</u> burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." <u>Id.</u> at 325, 106 S. Ct. at 2554.  After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322, 106 S. Ct. at 2552.

18

In this case, Axis will allege that it disputes factual allegations that are set forth in its Complaint and can prove that, at one time or another, Landmark's subcontractors either did not perform properly under their subcontracts or made demands upon Axis for payment for their defective work.  Under the <u>Anderson v. Liberty Lobby</u> analysis, however, those disputes are not "material" and should not prevent entry of summary judgment if they will not affect the ultimate outcome of the case.  Since Axis cannot demonstrate to this Court that its position would have been any different had it not received those disputed demands from Landmark's subcontractors or would not have escrowed money which was to be paid under Landmark's subcontract, as all of its remaining damage claims concern only its "backcharges" against Landmark, those "disputed facts" will have no impact on the ultimate outcome of the case such that the Court need not proceed to trial on those disputed allegations.

As Landmark has therefore met its obligation under <u>Celotex</u> to point out the issues on which there are an absence of proof sufficient to sustain Axis' claims at trial, Axis must offer sufficient evidence to persuade the Court that it will prevail on any or all of the Counts of its Complaint at the trial of this matter to defeat Landmark's Summary Judgment Motion.  Since the majority of those Counts are based upon false and/or incorrect allegations or are insufficient to sustain Axis' claims as a matter of law, they should be dismissed by way of Summary Judgment before the trial of this matter takes place.

### III.    AXIS LACKS CAPACITY TO BRING SUIT AGAINST LANDMARK IN THIS FORUM

It is undisputed that Axis is a foreign New York corporation which has brought this suit against Landmark before the Pennsylvania Federal District Court, even though Axis has never obtained a certificate of authority to do business in the Commonwealth of Pennsylvania.  Under the Pennsylvania Business Corporation Law, 15 Pa. C.S. § 4141, Axis is not permitted to maintain its suit in this forum as a foreign corporation doing business in Pennsylvania which is not registered or filed a certificate of authority to do business within this state.

Section 4141 of the Pennsylvania Business Corporation Law, entitled "Penalty for Doing Business Without Certificate of Authority" provides in part as follows:

> **(a) Right to Bring Actions or Proceedings Suspended. -** A non-qualified foreign business corporation doing business in this Commonwealth within the meeting of subchapter B (relating to qualification) shall not be permitted to maintain any action or     proceeding in any Court of this Commonwealth until the corporation has obtained a certificate of authority.

15 Pa. C.S. § 4141(a).  The requirement of a non-qualified foreign corporation shall not be permitted to file or maintain suit in this Commonwealth also applies to actions brought in the Federal District Courts located in Pennsylvania.  <u>Aberle Hosiery Co. v. American Arbitration Association</u>, 337 F. Supp. 90 (E.D. Pa. 1972).

21

The question of whether a foreign corporation is "doing business" in this forum is a fact question which must be determined by the Court on a case by case basis. University of Dominica v. Pennsylvania College of Podiatric Medicine, 301 Pa. Super. 446. A.2d 1339, 1341 (1982). Furthermore, any relief granted to a foreign corporation doing business in Pennsylvania which has failed to register as a foreign corporation and obtain a certificate of authority in contravention of the Business Corporation Law will be void and unenforceable, even if that foreign corporation subsequently obtains a certificate of authority to conduct business in Pennsylvania after that relief has already been granted. International Inventors Incorporated, East v. Berger, 242 Pa. Super. 265, 363 A.2d 1262 (1976).

It has been held by the Pennsylvania Supreme Court that a foreign corporation which enters a contract with a Pennsylvania entity, which is to be performed in whole or in part within this Commonwealth, may be barred from bringing suit to enforce that agreement in Pennsylvania if the Corporation is deemed to be "doing business" by entering into that Agreement. Hoffman Construction Co. v. Erwin, 331 Pa. 384, 200 A. 579 (1938). Indeed, in a more recent decision, the Pennsylvania Supreme Court held that a foreign corporation which entered an agreement with a Pennsylvania entity under which it shipped lighting fixtures to Pennsylvania on six occasions over the course of six months constituted "doing business" in this Commonwealth which barred the non-qualified foreign entity from bringing suit in Pennsylvania to enforce the terms of that agreement.

<u>Leswat Lighting Systems, Inc. v. Lehigh Valley Restaurant Group, Inc.</u>, 444 Pa. Super. 281, 663 A.2d 783 (1995).

In this case, as evidenced by the Affidavit of Douglas George (Exhibit 1 to Appendix to Defendant's Motion for Summary Judgment), Axis entered into three separate subcontracts with Landmark to purchase modular building units for a total price of $4,320,943.00 over the course of more than two years.  Axis' business relationship with Landmark, therefore, is not merely a single isolated contact with this forum which would excuse it from the requirement of obtaining a certificate of authority from the Pennsylvania Department of State.

Section 4122 of the Business Corporation Law does not provide a hard and fast criteria for what constitutes "doing business," but instead provides a listing of isolated acts which by definition do not constitute "doing business" which would require a foreign corporation to obtain a certificate of authority.  15 Pa. C.S. § 4122(a).  The 1988 Committee Comments to Section 4122, however, clearly illustrate that Axis' ongoing business relations with Landmark does constitute "doing business" which would necessitate a certificate of authority for Axis to bring suit in this forum as follows:

> The concept of "doing business" involves regular, repeated and continuing business contacts of a local nature.  A single agreement or isolated transaction does not constitute the doing of business if there is no intention to repeat the transaction or engage in similar transactions.  Since the question is entirely one of fact, Subsection (a)(10) uses the partially objective test that a transaction completed within

> thirty (30) days does not constitute "doing business" if it is
> not one in the course of "repeated transactions of a like
> nature." *A continuing transaction that is not completed within
> thirty days will likely require obtaining a certificate of
> authority, whether or not one of a number of repeated
> transactions*, but that issue is not addressed by the 1988 BCL.
> The 30-day provision is, in other words, a "safe harbor" for
> not requiring a certificate of authority.

1988 Committee Comment to 15 Pa. C.S. § 4122 (emphasis added).  See <u>Leswat Lighting</u>

<u>Systems, Inc. v. Lehigh Valley Restaurant Group</u>, supra., 663 A.2d at 785.

Axis had engaged in a three year relationship under agreements which it agreed to

pay over $4 million for Landmark's modular construction units.  (Exhibit 1 to Appendix

to Defendant's Motion for Summary Judgment).  That ongoing business relationship

constituted conduct which was regular, systematic and extensive transactions requiring

performance in this state well over the 30-day limitation, such that Axis was obviously

required to obtain a certificate of authority before it would be permitted to commence and

prosecute any actions or proceeds in the Courts of Pennsylvania.  Since Axis has violated

those requirements of the Business Corporation Law, therefore, its present suit against

Landmark should be dismissed by this Court.

## IV.    <u>LACK OF LIABILITY AGAINST DOUGLAS GEORGE PERSONALLY</u>

There are typically only two ways that an agent for a corporation can be held

individually liable for the acts of the corporation itself.  One is if the court pierces the

corporate veil; the other is if the individual agent personally committed the wrongful act.

<u>Wicks v. Milzoco Bldrs., Inc.</u>, 503 Pa. 614, 470 A.2d 86, 89-90 (1983).  Axis' Complaint does not allege facts which would support holding Douglas George individually liable under either theory.

Under Pennsylvania law, it is well established that a corporation shall be regarded as an independent entity and that there is a strong presumption against piercing the corporate veil.  <u>Lumux Indus., Inc. v. Aultman</u>, 543 Pa. 38, 669 A.2d 893, 895 (1995).  All of the allegations of fraud made in Count I of Axis' Complaint, however, concerning actions taken by Douglas George were all done on behalf of Landmark, however, which actions Axis admits were undertaken within the scope of his employment as Vice-President of the corporation.  Axis has not made any allegations that Landmark is undercapitalized or that it failed to adhere to corporate formalities.  Nor are there any allegations that Mr. George intermingled his personal affairs with those of Landmark, or that Mr. George used the corporate identity of Landmark to perpetrate a fraud.  <u>Lumux</u>, 543 Pa. 38, 669 A.2d at 895 (reciting factors which may justify piercing the corporate veil).  There is thus no basis for piercing the corporate veil of Landmark to hold Douglas George individually liable.  <u>See Brethwaite v. Cincinnati Milacron</u>, No. Civ. A 94-3621, 1995 WL 232519 at *6 (E.D. Pa. Apr. 19, 1995) (denying motion for leave to amend to join party in absence of allegations which would support piercing the corporate veil).

The only other theory under which Mr. George could be held individually liable is if he actively participated in the alleged interference by Landmark.  Axis must therefore

show that Mr. George knowingly and affirmatively acted to perpetrate the interference.

As the Pennsylvania Supreme Court explained the corporate participation theory in <u>Wicks</u>

<u>v. Milzoco Bldrs., Inc.</u>, supra., as follows:

> The general, if not universal, rule is that an officer of a
> corporation who takes part in the commission of a tort by the
> corporation is personally liable therefor; but that an officer of
> a corporation who takes no part in the commission of the tort
> is not personally liable to third persons for such a tort, nor for
> the acts of their agents, officers or employees of the
> corporation in committing it, unless he specifically directed
> the particular act to be done or participated, or cooperated
> therein.

470 A.2d at 90. In this case, Axis alleges only that Douglas George signed payment

certifications on behalf of Landmark. There are no allegations that Douglas George knew

the applications were false or that he personally intended to deceive and mislead Axis for

his personal benefit. These are passive acts of nonfeasance which cannot give rise to

individual liability on Mr. George's part for the conduct of Landmark. In the absence of

any allegation that Douglas George actively took part in the commission of allegedly

tortious conduct by Landmark, Axis cannot state a viable cause of action against Douglas

George individually.

26

## V.    LACK OF SUFFICIENT EVIDENCE TO ESTABLISH ELEMENTS OF FRAUD

Axis' Complaint alleges that Landmark fraudulently induced it to enter into the Escrow Settlement Agreement through representations and assurances made in Landmark's payment applications and waivers of liens, assuring Axis that Landmark had paid its subcontractors and suppliers for the Plainedge Schools' project.  Axis simply concludes that the assurances contained in Landmark's payment certifications were intentional misrepresentations solely because Axis received payment demands from three of Landmark's subcontractors in January, 2002, alleging that they were owed money under their respective subcontracts with Landmark.  Axis itself acknowledges that two of those subcontractors, Pioneer and Town Supply, performed defective work under their subcontract with Landmark for which Axis has demanded backcharges for time and material provided by its own employees.  The third subcontractor was paid in full by the time Landmark's work on the project was substantially completed.

In order to succeed on a cause of action for fraud, the Plaintiff must establish all of the required elements *by clear and convincing evidence* of the following:

1)      A misrepresentation was made;

2)      Which was material to the transaction at hand;

3)      Which was made falsely or with knowledge of its falsity or recklessness as to whether it was true or false;

4)      With intent to mislead another into relying upon it;

5)      With justifiable reliance on the misrepresentation;

6)      Resulting in injury proximately caused by that detrimental reliance.

Skurnowicz v. Lucci, 789 A.2d 788 (Pa. Super. 2002), citing Bortz v. Noon, 566 Pa. 489

729 A.2d 555, 560 (1999).  A misrepresentation will be deemed material only if "it is of

such character that had it not been made, the transaction would not have been

consummated."  Sewak v. Lockhart, 699 A.2d 755, 760 (Pa. Super. 1997).

Axis' "fraud" claim must fail for several significant reasons.  In the first place,

Axis is unable to demonstrate that the certifications made by Landmark were in fact false

at the time they were given to Axis.[1]  Axis cannot draw any connection between the dates

and amounts demanded by those subcontractors and the certifications contained in

Landmark's payment application and lien waivers.  For instance, Axis avers that it

became aware that Landmark had paid "nothing" to Pioneer Windows, despite the

certifications contained in its payment application "that all amounts have been paid by the

---

[1]

Axis' contention that those certifications *required* Landmark to
make payment for work by its subcontractors which had not even
been invoiced or which work was defective defies both logic and
the normal practices in the construction industry.  Obviously,
all contractors in the chain of construction work release payment
to subcontractors and suppliers only after the work had been
properly performed and invoiced to the contractor such that the
sums would be then legally "due and owing" from that contractor.
Any expectation by Axis to the contrary would be unreasonable and
therefore fail to fulfill the requirement of "justifiable
reliance" to establish liability for fraud.

28

contractor for work for which previous Certificates for Payment were issued and payments received from the owner . . ."  Axis neglects to note, however, that the Pioneer windows were delivered extremely late and were not provided for installation until November and December, 2001, after those certifications were issued, and that the windows which were delivered were defective and required extensive corrective work by both Landmark and Axis, which corrective work Pioneer refused to complete, such that no sums were "due" for Pioneer's work at the time those certifications were provided.  Axis is further unable to establish that Landmark had already received payment for those windows because the sum of $60,000.00 had been previously deducted by Axis from Landmark's payment application No. 6 which was submitted in October, 2001 (Exhibit "5" to Appendix to Defendant's Motion for Summary Judgment) which invoice included Landmark's charges for windows under its subcontract with Axis.

In the present case, Axis is likewise unable to demonstrate, by clear and convincing evidence, that Landmark or its Vice-President made any specific representation concerning payment to Landmark's subcontractors which was made falsely or with reckless disregard of its truth or falsity.  Axis is therefore unable to demonstrate when money which Landmark had been paid by Axis would be due to be paid to Landmark's subcontractors, particularly those who had performed faulty or defective work under their respective subcontracts.  Since no money would be due and owing from

29

Landmark to those subcontractors, therefore Axis cannot demonstrate that Landmark's certifications were knowingly false at the time they were submitted.

Furthermore, the fact of whether payment had been made to the Town Supply and Pioneer was not "material" to Axis' decision to enter into the Escrow Settlement Agreement is demonstrated by the fact that Landmark was not asked to provide interim waivers of liens from those door and window subcontractors under the terms of that agreement, which waivers were only required in order to obtain final payment of $18,500.00, to be paid under the agreement. See Exhibit 8 of Defendant's Appendix for Motion for Summary Judgment, par. 6, 7 and 8(c) and (d). Obviously, if Axis excluded the door and window subcontractors from whom it required Landmark to provide interim certifications, it was not concerned about whether those subcontractors had been paid at the time the Escrow Settlement Agreement was entered into, which is also the effective date of the payment certifications that Axis claims are fraudulent.

Once again, Axis is likewise unable to demonstrate detrimental reliance, or proximate causation, for its decision to enter into the Escrow Settlement Agreement based upon any alleged misrepresentations made by Landmark concerning payment to those subcontractors. At the time that Axis signed that Agreement, Landmark had been demanding adequate assurances of Axis' intention to comply with its payment obligations for the three projects which Landmark had already performed for Axis. The purpose of the agreement, therefore, was not to give Axis suitable protection from potential liens but

30

was to secure Landmark's ability to get paid for delivery of the final buildings for the

Plainedge Schools project.  (See Exhibit 7 of Defendant's Appendix to Summary

Judgment Motion).

Axis would have this Court accept the proposition that it would not have agreed to

pay money due Landmark, or escrow any sums, for delivery of those buildings, but would

have withheld them for payment of potential lien claims by Landmark's subcontractors,

had Landmark not "misrepresented" the status of payments to its subcontractors.  In that

event, however, Axis would not have received delivery of the final buildings for the

Plainedge Schools project, would have had to go out to hire a substitute contractor in

order to furnish the required construction services and would have incurred expenses far

in excess of any amounts that were deposited in the escrow account to guarantee

Landmark's right to payment for the project.  Of course, Axis would have had no legal or

contractual right to take such action to withhold payment on Landmark's subcontract,

since proof of payment to Landmark's subcontractors was not a requirement of its

subcontract with Axis.  (Exhibits 2 and 3 of Defendant's Appendix to Summary Judgment

Motion).  Therefore, Axis would not have been permitted to recoup any of its increased

costs from Landmark for cancellation of that subcontract.  Therefore, there is no logical

basis to conclude that Axis' agreement to escrow the balance on Landmark's subcontract

was the result of any justifiable or detrimental reliance on any representations made by

Landmark concerning payments to its subcontractors.

This was exactly the conclusion reached by other Courts as to vague or unsubstantiated allegations of misrepresentation, on which reasonable reliance could not be substantiated, in several cases.  In City of Rome v. Glanton, 958 F. Supp. 1026 (E.D. Pa. 1997), Judge Marvin Katz of this Court entered summary judgment for dismissal of various vague claims of fraudulent misrepresentation concerning an unconsummated agreement to display the Barnes art collection in the City of Rome.  Judge Katz found, even if the statements made by representatives of the Barnes Foundation were untrue, there could be no justifiable reliance, and hence no proximate cause for injury, based upon such vague and insubstantial assurances which would justifiably induce reliance by the recipient of those communications.  988 F. Supp. at 1038-1039.  Likewise, in Blumenstock v. Gibson, 811 A.2d 1029 (Pa. Super. 2002), the Pennsylvania Superior Court upheld the entry of summary judgment on a home purchaser's claim for fraud based upon the seller's alleged misrepresentation concerning the lack of any "water problems" in a basement in which two sump pumps had previously been installed on the grounds that, even if those misrepresentations have been made, the buyers could not have reasonably relied upon them in believing that a basement which required two sump pumps would not be subject to water infiltration.

> It is not enough simply to assert that a statement was "fraudulent" and that reliance upon it induced some action. Gruenwald, 730 A.2d at 1014.  Nor is it sufficient to aver that a knowingly false statement was made for the purpose of misleading another into reliance upon it.  Sewak, 699 A.2d at

759.  Before fraud will be found, a Plaintiff must demonstrate
that he justifiably relied on the false statement.  Id.  Without
showing that it was justifiable for buyers to rely on the
statements (oral and written) by Sellers and their agent, buyers
cannot prove fraud.  We agree with the Trial Court that buyers
did not demonstrate their reliance was    "justifiable."  Thus we find that that Trial Court
properly ruled that Buyers may not move beyond the terms of an integrated agreement of
sale to explore purported oral representations.

811 A.2d at 1038.

Likewise, if this Court must conclude that there is no clear and convincing

evidence Axis supposed reliance upon assurances of Landmark's payments to its

subcontractors contained in its payment applications and lien waivers, even if they were

not accurate, was not a reasonable or justifiable reason for which it entered into the

Escrow Settlement Agreement.

Axis is also unable to prove any damages for fraud, as it is unable to demonstrate

that it is in any different position than it would have been had it not entered into the

Escrow Settlement Agreement.  At this point, since all liens have been discharged and

sufficient funds remain in escrow to pay the only remaining subcontractor of Landmark,

Axis has also not suffered any pecuniary harm as a result of its agreement to enter into the

Escrow Settlement Agreement.  There are no bond claims, lien claims or other potential

liabilities to Landmark's suppliers and subcontractors, the exposure to which is the

foundation for Axis' claims in Count I for fraud, as well as the other Counts II for breach

of the Escrow Agreement, III for declaratory judgment, IV for unjust enrichment, V for a

constructive trust and VII for breach of the implied covenant of good faith and fair

dealing, which runs throughout Axis' Complaint against Landmark in this case. The only

arguable claim which Axis has for damages caused by Landmark is supposedly for work

which Axis was called upon to perform on Landmark's behalf, which work Axis will

claim it would have had to perform regardless of whether it entered into the Escrow

Settlement Agreement. Since Axis is no worse off, therefore, than it would have been if

the Escrow Agreement had not been negotiated, it cannot prove that it suffered harm from

any supposed fraudulent inducement to enter that agreement.

## V.    LACK OF MERIT TO REMAINING COUNTS OF AXIS' COMPLAINT

Landmark submits that there is no genuine issue of material fact as to the grounds

for liability imposed against it by Axis in Counts II, III, IV, V, VII and VIII which should

likewise be dismissed by way of the entry of summary judgment by this Court.

Count II of Axis' Complaint avers that Landmark is in breach of the Escrow

Settlement Agreement for various reasons. Paragraph 43 states that Landmark breached

its obligations to Axis by delivery of "false and fraudulent waivers of liens," which

simply repeats Axis' invalid fraud arguments addressed above. Paragraphs 44 through 46

aver that Landmark is in breach for failure to complete other elements of the Escrow

Settlement Agreement which are both incorrect and lacking in any evidentiary support.

Based upon these allegations, and the false allegation that Axis has exposure to lien

34

claims of over $240,000.00 based on Landmark's alleged failure to pay its subcontractors, Landmark seeks monetary damages for work it claims it performed on Landmark's behalf and for lack of payment from its customers. In addition to the fact that there is no factual or evidentiary support for these allegations, Axis fails to allege any grounds which would establish that any backcharges or delays in payment are related to alleged breaches of the Escrow Settlement Agreement. As indicated above, Axis' backcharge claim against Landmark is the subject of Count VI, which has nothing to do with the Escrow Settlement Agreement. Axis' claims in Count II for breach of the Escrow Settlement Agreement should therefore be dismissed.

Count III of Axis' Complaint against Landmark requests that a declaratory judgment for the return of $150,000.00 from the escrow account based upon Landmark's alleged fraudulent lien waivers. As indicated above, the Escrow Settlement Agreement has been modified under the settlement with Hummer and Pioneer Windows such that a balance of only $20,000.00 will be left in that account, which will be disbursed either to Axis, if it can prove liability on any of its backcharge claims against Landmark or to Town Supply if Axis' claims are dismissed in their entirety. Count III is therefore moot and should be dismissed by this Court.

Count IV of Axis' Complaint alleges that Landmark has been unjustly enriched by interim payments of $1,809,316.00 it has received on the Plainedge Project because Landmark supposedly has not paid subcontractors in excess of $240,000.00. This is a

quasi-contractual claim which is both lacking in any factual or evidentiary justification and is unnecessary in that Axis has made breach of contract claims against Landmark for its out-of-pocket costs for work it claims it performed on Landmark's behalf. There is therefore no basis for Axis to recover damage for "unjust enrichment" since, as Landmark's subcontractors have all been paid, Axis is unable to identify any "benefit" Landmark has received which this Court should order be refunded to Axis as an equitable remedy in this case.

The same analysis likewise applies to Count V under which Axis asked the Court to impose a "constructive trust" on "property" being held by Landmark. Once again, that property is the same $240,000.00 which Landmark supposedly had failed to pay to its HVAC, door and window subcontractors, all of which who have been or are due to be paid from the balance of funds held in the escrow account. There are therefore no monies on which the Court should impose a constructive trust under Count V of Axis' Complaint.

Count VII of Axis' Complaint alleges a claim for damages of $16,493.00 for work which Axis claims it performed in order to correct deficiencies in Hummer's work for the Yonkers' project. That claim has been settled between the parties (Exhibit 11 of Appendix to Defendant's Summary Judgment Motion), under which Axis received a total of $18,561.48 out of the escrow account in full and final settlement of any claims for backcharges related to the replacement of HVAC units on the Yonkers' project. Count VII is therefore moot and must therefore be dismissed.

36

Count VIII for "breach of implied covenant of good faith and fair dealing", repeats Axis' allegations concerning the "false and fraudulent waivers of liens" which Landmark provided to Axis (Complaint at par. 75), as well as other allegations Landmark held to Axis which have already been fulfilled. These allegations are incorrect, unsupported and repetitive of the claims made by Axis against Landmark in the previous counts of its Complaint. Since they are lacking in any merit, this Court should likewise dismiss Count VIII of Axis' Complaint by way of summary judgment.

## VI.    CONCLUSION

Axis has improperly brought this suit in the United States District Court for the Eastern District of Pennsylvania when it lacks any standing or capacity to pursue litigation in the Commonwealth of Pennsylvania. Therefore, the Court should immediately dismiss Axis' Complaint for lack of capacity to sue. Should Axis cure that deficiency, and this case proceeds to a bench trial, the only claims on which there are issues of fact which must be determined at trial concern Axis' attempt to assess backcharges against Landmark and Landmark's counterclaim for final payment and transportation delays, such that all remaining Counts of Axis' Complaint should be dismissed by entry of summary judgment by this Court prior to that trial.

FRANCIS X. CLARK, P.C.

DATE:

By:_____

    Francis X. Clark

987 Old Eagle School Road, Suite 705
Wayne, PA 19087
610-225-2372

Attorneys for Defendants,
Landmark Building Systems, Inc. and
Douglas George

## <u>CERTIFICATE OF SERVICE</u>

I, Francis X. Clark, hereby certify that I have served a true and correct copy of the foregoing upon counsel of record this date by first-class mail, postage prepaid, addressed as follows:

David R. Moffitt, Esquire
SAUL EWING, LLP
Centre Square West, 38th Floor
1500 Market Street
Philadelphia, PA 19102

Rene D. Quinlan, Esquire
COHEN, SEGLIAS, PALLAS,
  GREENHALL, FURMAN, P.C.
1515 Market Street
P.O. Box 59449
Philadelphia, PA 19102

Charles R. Pierce, Jr., Esquire
CHARLES R. PIERCE, JR., P.C.
32 Woodbury Road
Huntington, NY 11743

DATE:                                        _____
                                             Francis X. Clark