IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AXIS CONSTRUCTION CORP. | : CIVIL ACTION |
| Plaintiff | : |
| v. | : |
| | : NO. 02-CV-3017 |
| LANDMARK BUILDING SYSTEMS, | : |
| INC., et al. | : |
| Defendants | : |

**REPLY BRIEF OF DEFENDANT, LANDMARK BUILDING SYSTEMS, INC.,
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff, Axis Construction Corp. ("Axis") asserts a series of novel legal and factual defenses to the dismissal in whole or in part of its Complaint by way of entry of summary judgment in its Response and Memorandum in Opposition to the Motion of Defendant, Landmark Building Systems, Inc. ("Landmark"), for Summary Judgment on its Complaint.

Axis claims it is exempt, under 15 Pa. C.S. § 4122(a)(9) and the United States Supreme Court's decision in Allenberg Cotton Co. v. Pittman, 419 U.S. 20 (1974), from the requirement of registering as a foreign corporation to obtain a certificate of authority to do business in Pennsylvania. This registration is a prerequisite to its ability to bring suits in the Courts of the Commonwealth of Pennsylvania under Section 4141 of the Pennsylvania Business Corporation Law, 15 Pa. C.S. § 4141, which Axis claims should not be applied because its purchases from Landmark were made in "interstate commerce." While Axis holds the burden of proof that enforcement of that foreign corporation

1

registration requirement would be in violation of the Commerce Clause of the United States Constitution, U.S. Constitution Article 1, § 8, Cl. 3, it is unable to do so as a result of its long term transaction of business of an intra-state nature with Landmark.

In its continuing and unrelenting effort to obviate its obligations under the Escrow Settlement Agreement of December 18, 2001, Axis fabricates legal and factual questions concerning Landmark's payment certifications on which Axis cannot articulate any justifiable reliance or damages it incurred as a result of any supposed "fraud" in accordance with those certifications.

Axis' memorandum does not dispute the factual allegations in the Affidavit of Doug George that it was aware of deficiencies in the performance of Landmark's subcontractors before it entered into the Escrow Settlement Agreement. See Affidavit of Douglas George in Support of Defendant's Motion for Summary Judgment, Exhibit "1" to Defendant's Summary Judgment Motion at Par. 6 through 9. Axis also does not dispute the fact that it could not obtain the modular building units for its project from Landmark unless it entered into the Escrow Settlement Agreement. Axis, however, cannot point to any provision of its subcontract with Landmark or the Escrow Settlement Agreement which would have given it the contractual right to withhold payment from Landmark if Landmark had not paid its subcontractors in full, including those who had not properly performed their subcontract work. Axis also cannot explain how it would have obtained delivery of Landmark's buildings had it not entered into that Escrow Settlement Agreement. Finally, Axis cannot elucidate any harm it suffered as a result of

said fraud, other than to its ability to either withhold payments from Landmark or obtain compensation for its backcharges out of the escrow fund for the very same dollars for which it seeks compensation for backcharges under its claim for breach of contract.

## II. AXIS' DEFENSE UNDER COMMERCE CLAUSE OF U.S. CONSTITUTION

Axis' response to Landmark's Motion for Summary Judgment does not dispute the factual allegations that it is a New York corporation which has failed to register with the Commonwealth of Pennsylvania to obtain a certificate of authority to do business in the Commonwealth of Pennsylvania and that it was in fact "doing business" with Landmark, as defined under the Pennsylvania Business Corporation Law, here in Pennsylvania during the course of their long-term relationship. It is therefore apparent that Axis' suit should be dismissed in its entirety under 15 Pa. C.S. § 4141 for its failure to obtain a certificate of authority to do business in Pennsylvania unless Axis can sustain its burden of proof that requiring it to register to do business in the Commonwealth of Pennsylvania as required by the Pennsylvania Business Corporation Law would place an undue burden upon interstate commerce which outweighs the state's interest in enforcing its foreign corporation registration statute. Arab African International Bank v. Epstein, 10 F. 3d. 168, 173 (3d. Cir. 1993).

In support of its position, Axis cites the United States Supreme Court's decision in Allenberg Cotton Co., Inc. v. Pittman, 419 U.S. 20 (1974), but ignores both the factual circumstances and rationale that the Supreme Court applied in that case to determine that

the foreign business registration requirement violated the Commerce Clause of the United States Constitution. In <u>Allenberg Cotton</u>, a Tennessee business had contracted with a broker in Mississippi to purchase cotton which was shipped to Mississippi warehouses before that cotton was placed in the stream of interstate commerce. 419 U.S. at 23-24. The Court found that the shipment and storage of cotton to local warehouses was critical to the interstate nature of the cotton industry and in setting the market price for supply and demand for cotton purchased throughout the United States. Thus the Court stated:

> We deal here with a species of control over an intricate interstate marketing mechanism. The cotton exchange, like the livestock marketing regime involved in <u>Swift & Co. v. United States</u>, 196 U.S. 375 (1905), and in <u>Stafford v. Wallace</u>, 258 U.S. 495 (1922) has federal protection under the Commerce Clause.

419 U.S. at 29. Thus, the <u>Allenberg Cotton</u> Court ruled that, based upon the complex forces that affect market and price for that commodity, the acquisition of cotton for delivery and purchase to a local warehouse were such as "to contribute or to conclude to a unitary interstate transaction" which business was not "localized" or of an "intrastate character" and was therefore shielded under the Commerce Clause. 419 U.S. at 33-34, see <u>Arab African International Bank v. Epstein</u>, supra. at 173.

In the present case, Axis' purchase of modular building units from its Pennsylvania supplier was not undertaken to conclude a unitary interstate transaction. On the contrary, Axis had an ongoing business relationship with Landmark over a three year period in which it contracted with Landmark in Pennsylvania to manufacture buildings in

4

Pennsylvania for which Axis took delivery at Landmark's factory in Pennsylvania. Therefore, almost all of the work for which Axis contracted for contract prices in excess of $4.3 million were performed, completed and paid for within the Commonwealth of Pennsylvania which business was of a local and intrastate nature. See S & H Contractors v. A.J. Taft Coal Co., 906 F.2d 1507 (11th Cir. 1990, cert. den. 498 U.S. 1026 (1991) (contracting out-of-state for manufacturing and assembly of unassembled equipment not interstate commerce).

The balancing test which this Court is to apply in determining whether the enforcement of the Business Corporation Law, by requiring Axis to register to do business as a foreign corporation or forfeit its rights to bring suit here in the Commonwealth of Pennsylvania, creates an undue burden on interstate commerce in violation of the Commerce Clause is a much more complex case-by-case analysis than Axis would have this Court believe. Thus, in Aldans, Inc. v. Packel, 524 F.2d. 38 (3d. Cir. 1975), the Third Circuit explained that the analysis of whether the Commerce Clause limits the power of a state to impose its choice of law on any transaction within the broad ambit of congressional power under the Constitution to regulate interstate commerce should be applied when the transaction:

> (1) is one in which Congress has made its own choice of law, or
> (2) is one in which Congress has made no specific choice of law, but
>> (a) despite this inaction, the nature of the subject matter requires a uniform national rule, or
>> (b) the choice of law made by the state discriminates against persons engaged in interstate commerce in favor of local interest, or

5

>             (c) a non-discriminatory state choice of law, in an area where national uniformity may not be essential, imposes a burden on interstate commerce in excess of any value attaching to the state's interest and imposing its regulation.

524 F. 2d. at 45-46 (footnotes and citations omitted).  The only circumstance under which the Commerce Clause would be called into play in this case would be under provision (2)(c) of the Aldans, Inc. analysis to the extent that requiring Axis to register as a foreign corporation would present an "undue burden" on interstate commerce which outweighs any value attaching to the state's interest in imposing its regulations.  See Arab African International Bank v. Epstein, supra. at 172.  Axis, however, failed to offer the Court any analysis which would demonstrate that the burden of enforcing the foreign registration requirement would outweigh the state's interest in regulating foreign companies which transact business in Pennsylvania with local modular building manufacturers.

The extent of the constitutionality of state regulation of interstate commerce depends largely on the territorial scope of the transaction which the state seeks to regulate; if the transaction occurs wholly outside of the boundaries of the state, that regulation would be unconstitutional, but if the transaction occurs within the boundary of the state, it is constitutional so long as it furthers a legitimate state interest. A.S. Goldman & Co., Inc. v. New Jersey Bureau of Securities, 163 F. 3d. 780 (3d. Cir. 1999).  The Court's analysis of state law which only indirectly affect interstate commerce, and does so evenhandedly, concerns only whether the state's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.  Instructional Systems, Inc. v. Computer Curriculum Corp., 35 F. 2d 813, 824 (1994).  In this case, Axis entered

into the Pennsylvania forum, contracted with a Pennsylvania entity to fabricate modular building units for which Axis took delivery with its own hired vehicles at the Pennsylvania facility. The transactions at issue took place over a period of three years and involved significant expenditures on the part of both Axis and Landmark. It is difficult to comprehend that the enforcement of the Business Corporation Law on Axis' local activities in this forum would place an undue burden on the transaction of interstate commerce or does not fulfill an important state interest in regulating foreign businesses.

In <u>Comm. of Pennsylvania v National Federation of the Blind</u>, 18 Pa. Cmwlth. 291, 335 A.2d 832 (1975), the Commonwealth Court distinguished the <u>Allenberg Cotton</u> decision and found that the state's interest in regulating the activities of foreign charities which solicited contributions within the Commonwealth of Pennsylvania, and its desire to avoid fraud and abuse of Pennsylvania residents in the course of that business, constituted a sufficient state interest to uphold the foreign registration requirements for out-of-state companies which the Supreme Court found unconstitutional in <u>Allenberg Cotton</u>.

> The situation before this Court is completely dissimilar from that before the Supreme Court in <u>Allenberg</u>. While charities perform a laudatory function, that function cannot be perceived as in intricate link in the national economic chain. There exists no potential for partial or total economic collapse where charities are regulated on a local level. Also, the provisions of the Act are neither harsh or discriminatory, and are not likely to discourage legitimate out-of-state authorities from soliciting in Pennsylvania. Since the act has equal applicability to local and out-of-state charities, it is certainly not the former whom the Act seeks to protect. Rather, the Act is a temperate response to the needs of the citizens of this Commonwealth for protection from fraudulent devices in the guise of charity. The Act does not unduly interfere with

> interstate commerce, and the Commerce Clause does not
> prevent this Court from assuming jurisdiction over the subject
> matter of this litigation.

355 A.2d at 837-38. Thus, despite the facile reasoning in Axis's response, simply characterizing Axis activities as taking place within "interstate commerce," does not exempt it from the requirement of filing for a certificate of authority to do business in the Commonwealth of Pennsylvania. Rather, Axis is obliged to show that the regulation of its local activities in the Commonwealth of Pennsylvania in purchasing these large modular buildings, by requiring the filing for a certificate of authority to do business in this forum, imposes an undue burden on interstate commerce and fails to protect a legitimate state interest in the regulation of foreign businesses doing business in Pennsylvania with Pennsylvania companies. Since Axis has completely failed to do so, its Complaint should be dismissed in accordance with the Pennsylvania Corporation Law by entry of Summary Judgment in this matter.

### III.   AXIS' FRAUD ALLEGATIONS

Axis' Response, Memorandum of Law and Declaration of John Buongiorno made great pains to claim that Axis was somehow misled into escrowing funds to pay for the completion of Landmark's work because Landmark had not paid its own subcontractors who had not properly performed and completed their work.

In the first place, Axis does not dispute the fact that it was Landmark's two subcontractors on the Plainedge Project, Town Supply and Pioneer Window, had not

properly performed their work as of the time they asserted their disputed payment demands.  In fact, when Axis repeatedly insisted that Landmark pay Pioneer Windows for work which had not been performed properly, Landmark agreed to do so once Axis and the owner indicated that the windows were acceptable.  See Landmark's correspondence to Axis dated January 14, 21 and 28 (2 letters), 2002 attached hereto as Exhibit "A".  This, of course, Axis refused to do.

 Instead, it has chosen to use the ongoing dispute between Landmark and Pioneer as to the adequacy of its work, and whether any payment was owed Pioneer for that deficient work, as the basis to evade Axis' own obligations under the Escrow Settlement Agreement.  Axis complains that monies that would have been used to compensate it for backcharges have now been committed to pay Pioneer for the work that it performed, and which has only recently been completed and accepted by the Owner.  (Axis Memorandum at p. 14).  See letter of Charles R. Pierce, Jr. dated March 6, 2003 attached hereto as Exhibit "B".  Since the claims are now settled, there is no basis for lien liability on the part of Axis for work it claims it paid Landmark for which was the basis of its original allegations of fraud in its first Complaint (Complaint par. 22 and 23 Exhibit 10 to Landmark Summary Judgment Motion).

 Axis neglects to note, however, that the Escrow Settlement Agreement makes no provision for funds in the escrow account to be returned to Axis to pay for backcharges or otherwise.  This was only an after-the-fact claim, contrary to the terms of the Escrow Settlement Agreement, which Axis came up with after the funds were placed in escrow.

Therefore, the fact that Axis wished to get the money back has absolutely nothing to do with the amounts to be released to Landmark following completion of various items on the project or sums owed and to be paid by Landmark to Pioneer Windows once they had properly performed and completed work under their subcontract.

Since Axis' only claim for monetary harm arising out of the escrow agreement concerns the source of funds to be paid to it if it is successful on its claim for backcharges, it is unable to identify any detrimental reliance or harm arising from its agreement to place those funds in escrow to secure Landmark's ability to obtain payment for the completion of its work, which was the reason the parties originally entered into the Escrow Settlement Agreement.  (See Axis letter of November 21, 2001, Exhibit 7 to Landmark's Summary Judgment Motion).  Therefore, if Axis' Complaint is not dismissed in its entirety, its remaining claims other than that for breach of its subcontract should be dismissed by way of summary judgment.

FRANCIS X. CLARK, P.C.

DATE:

By:_____
    Francis X. Clark

Attorneys for Defendant and
Third Party Plaintiff,
Landmark Building Systems, Inc.

## **CERTIFICATE OF SERVICE**

I, Francis X. Clark, hereby certify that I have served a true and correct copy of the foregoing Reply Brief in Support of Motion for Summary Judgment which has been filed electronically with the Court and is available for viewing and downloading from the ECF system, upon counsel of record this date, by first-class mail, postage prepaid, addressed as follows:

|  |  |
|---|---|
| David R. Moffitt, Esquire<br>SAUL EWING, LLP<br>Centre Square West, 38th Floor<br>1500 Market Street<br>Philadelphia, PA 19102 | Edward Seglias, Esquire<br>Rene D. Quinlan, Esquire<br>COHEN, SEGLIAS, PALLAS,<br>  GREENHALL, FURMAN, P.C.<br>1515 Market Street<br>P.O. Box 59449<br>Philadelphia, PA 19102 |

DATE: _____

Francis X. Clark