IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AXIS CONSTRUCTION CORP., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LANDMARK BUILDING | : | |
| SYSTEMS, INC., et al., | : | No. 02-3017 |
|     Defendants. | : | |

**MEMORANDUM AND ORDER**

**SCHILLER, J.**                                                                                                                                                                                                                        March    , 2003

      This lawsuit arises from a construction contract that Plaintiff Axis Construction Corporation ("Axis") entered into with Defendant Landmark Building Systems, Inc. ("Landmark"). Presently before the Court is Landmark's motion for summary judgment. For the reasons set forth below, I deny Landmark's motion except to the extent that claims that Axis has agreed that certain claims have been rendered moot.

**I.    BACKGROUND**

      Plaintiff Axis served as the general contractor to Plainedge School District in New York on a contract to provide and install modular classroom buildings. In July 2001, Axis purchased these buildings from Defendant Landmark for shipment from Pennsylvania to New York. By Fall 2001, substantial disputes had arisen between Axis and Landmark about the amount of money owed to Landmark for work performed on the Plainedge School District project and two previous construction projects. On December 18, 2001, in an attempt to resolve this dispute, the parties entered into an agreement ("December 18, 2001 agreement") under which Axis would pay a sum to Landmark and an additional sum would be placed in an escrow account for distribution to

Landmark upon the completion of various construction tasks. This agreement, however, did not end the disputes between the parties, and Axis commenced the instant action against Landmark and Landmark's Vice President, Douglas George.[1] Landmark then filed a Third-Party Complaint against several of its subcontractors.

In its motion for summary judgment, Landmark argues that Axis, as a foreign corporation that has not obtained a certificate of authority in Pennsylvania, lacks capacity to sue in this Court. In the alternative, Landmark contends it is entitled to summary judgment on Axis's claims for (a) fraud, (b) breach of the December 18, 2001 letter agreement, (c) breach of the implied covenant of good faith and fair dealing, and (d) a declaratory judgment regarding its rights to the funds held in escrow because those claims lack evidentiary support.[2]

## II.    STANDARD OF REVIEW

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality of the facts at issue is determined by the substantive law. *Id.*

---

[1] The escrow agents appointed under the December 18, 2001 agreement are also Defendants in this action.

[2] Landmark also argues that it is entitled to summary judgment on the other counts in Plaintiff's Complaint with the exception of Count VI – Axis's claim for breach of the Landmark subcontract. Axis concedes that Counts IV, V, and VII of its Complaint have been mooted by events transpiring after this action was commenced, and I dismiss those counts as moot.

In making this determination, the non-moving party is entitled to all reasonable inferences and the evidence is viewed in the light most favorable to that party. *See Pollock v. Am. Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir. 1986).

### III. DISCUSSION

#### A. Capacity to Maintain Suit

Landmark argues that Axis lacks capacity to bring suit in this Court because it has not obtained a certificate of authority to do business in the Commonwealth of Pennsylvania. Relying on a provision of the Pennsylvania Business Corporation Law, Landmark contends that Axis, as a "nonqualified foreign business corporation doing business in this commonwealth[,]. . . [should] not be permitted to maintain any action or proceeding in any court of this commonwealth until the corporation has obtained a certificate of authority." 15 PA. CON. STAT. § 4141 (2002).[3]

In this case, it is undisputed that Axis, a New York corporation, has not obtained a certificate of authority. In arguing that Axis lacks capacity to sue, Landmark implies that Axis's failure to obtain a certificate authority amounts to a jurisdictional defect, requiring immediate dismissal of Axis's claims. Case law, however, points to the opposite conclusion:

> The failure of a foreign corporation to comply with § 2014 [now § 4141] . . . does not deprive the Pennsylvania courts of subject matter jurisdiction. Section 2014 is

---

[3] Although the Pennsylvania statute refers specifically to "any court of this commonwealth," 15 PA. CON. STAT. § 4141(a), the United States Supreme Court has held that door-closing statutes barring recovery in state court likewise bar recovery in federal courts sitting in diversity in that state. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 536 n.1, 538 (1949) (holding that a Mississippi statute, which required foreign corporations doing business in Mississippi to file a written designation of agent on whom service of process may be made in order to maintain actions in Mississippi court, precluded actions in diversity cases in federal court in Mississippi when statute had not been complied with).

> a procedural statute defining a foreign corporation's capacity to maintain a suit. Plaintiff need not establish in its complaint that it has capacity to sue; instead, the lack of capacity to sue is a matter to be raised by defendant in its answer to the complaint, or in a preliminary objection asserting the defense of lack of capacity to sue. . . .

*Typh, Inc. v. Typhoon Fence of Pa., Inc.*, 461 F. Supp. 994, 996 (E.D. Pa. 1978).

The view set forth in the *Typh* case is well-supported. *See generally* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1006 (2d ed. 1990). Although capacity is not one of the defenses specifically listed in Federal Rule of Civil Procedure 12(h) as waived if not raised by motion or in a responsive pleading, the Third Circuit has analogized capacity to venue, objections to which are waived if not timely asserted. *See Barrack v. Van Dusen*, 309 F.2d 953, 957 (3d Cir. 1962) (stating that "requirement of capacity to sue is no more a legal fiction than is the necessity for having proper venue. Obviously, it, like venue, can be waived.") (*citing* FED. R. CIV. P. 9(a) and 12(h)); *see also Marston v. Am. Employers Ins. Co.,* 439 F.2d 1035, 1041 (1st Cir. 1971) (stating that defense based on capacity should be made "as soon as possible" and holding that defendant waived defense of capacity to sue where its answer merely denied plaintiff's capacity without specificity and issue was not raised again until trial), *rev'd on other grounds*, 376 U.S. 612 (1964); *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 474 (D.N.J. 1992) (noting that "a challenge to a party's capacity to sue or be sued is an affirmative defense, and failure to raise the defense results in its waiver"); FED. R. CIV. P. 9(a) ("When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued . . . the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."). Because it was not raised until the summary judgment stage of these proceedings, I conclude that Landmark's capacity defense has been waived.

The circumstances presented here reveal that it is particularly appropriate to find that Landmark has waived its right to object to Axis's capacity to sue. Approximately one month after Axis commenced the instant action, Third-Party Defendant Pioneer filed a motion to dismiss, or in the alternative, to transfer this matter to the United States District Court for the Eastern District of New York. In responding to Pioneer's motion, Landmark vigorously argued against transfer, contending that this Court is "obviously both the proper venue and the one which is most convenient for disposition of all claims between the parties to this action." (Landmark's Ans. to Pioneer's Mot. to Dismiss at 11.)

Among other reasons, Landmark's present position is noteworthy because, in the event Axis's claims were dismissed or transferred from this Court, this matter would likely proceed before the Eastern District of New York. That is, Landmark's current position that this case should not proceed in this Court is plainly inconsistent with its prior arguments opposing transfer to the Eastern District of New York. Consequently, allowing Landmark's contentions related to want of capacity to prevail at this stage of the proceedings would have the undesirable effect of promoting gamesmanship rather than the fair and efficient resolution of legal actions. These considerations further support my conclusion that Landmark's capacity defense cannot be raised at this relatively late stage of the litigation.

  B. **Landmark's Remaining Arguments**

    1. **Axis's Fraud Claims**

In Count I of its Complaint, claiming fraud against Landmark and Douglas George, Axis alleges that Mr. George, acting within the scope of his employment as Landmark's Vice President, intentionally made false representations and certifications to Axis about the extent to which Landmark had made payments to its subcontractors, and submitted false payment certifications and

false waivers of liens. As a result of these misrepresentations, Axis further alleges, it entered into the December 18, 2001 agreement and paid Landmark sums that it otherwise would not have.

The elements of fraud are: (1) a misrepresentation; (2) a fraudulent utterance thereof, (3) an intention by the maker to induce the recipient to act, (4) justifiable reliance by the recipient on the misrepresentation, and (5) damage to the recipient as a proximate result of the misrepresentation. *See Altimari v. John Hancock Variable Life Ins. Co.,* Civ. A. No. 02-2972, 2003 U.S. Dist. LEXIS 2891, at *31, 2003 WL 665013, at *10 (E.D. Pa. Feb. 26, 2003) (applying Pennsylvania law); *see also Dooner v. Keefe, Bruyette & Woods, Inc.*, Civ. A. No. 00-572, 2003 U.S. Dist. LEXIS 619, at *5, 2003 WL 135706, at *2 (S.D.N.Y. Jan. 17, 2003) (listing similar elements of fraud claims under New York law).[4] Landmark argues that the factual record does not support Axis's allegations with respect to the intentionality and reliance elements.

In view of the record before the Court, factual disputes preclude the entry of summary judgment. First, there is circumstantial evidence from which one could infer the requisite intent to defraud. *See Rohm & Haas Co. v. Cont'l Cas. Co.,* 781 A.2d 1172, 1179 (Pa. 2001) ("fraud 'is never proclaimed from the housetops. . . . It must necessarily be largely inferred from the surrounding circumstances.'" (*quoting Shechter v. Shechter*, 76 A.2d 753, 755 (Pa. 1950)); *In re Estate of Delyanis*, 252 A.D.2d 585, 586 (N.Y. App. Div. 1998) (holding that there must be "sufficient circumstantial evidence of fraud and undue influence to warrant a trial on those questions"). Here, there is evidence that Mr. George signed the allegedly false certifications

---

[4] The parties have not addressed what law is applicable to this action and have cited both New York and Pennsylvania case law. With respect to the issues presented in Landmark's motion for summary judgment, there are no significant differences between Pennsylvania and New York law. Nonetheless, at trial, the parties should be prepared to address choice of law issues.

(Compl., Ex. D "Waiver of Liens"), and, that as Landmark's Vice President of Construction, he oversaw the Plainedge Project (George Dep. at 53).

Based on these facts, and viewing the inferences to be drawn therefrom in a light favorable to Axis, there is sufficient evidence to meet the scienter requirement at this stage of the proceedings. Second, there is evidence in the record that Axis justifiably relied on Mr. George's representations and that but for Mr. George's allegedly false certifications, "Axis would never have entered into the December 18, 2001 Letter Agreement." ( Buongiorno Decl. ¶ 13-14; Buongiorno Dep. at 152-54.) Accordingly, I will not enter summary judgment on the fraud claims against Landmark. In addition, the evidence discussed above, which suggests that Mr. George personally intended to deceive Axis, is sufficient for Axis's claims against Mr. George to go forward. *See Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983) (holding that liability attaches to corporate officer where record establishes individual's participation in tortious activity); *Kopec v. Hempstead Gardens, Inc.*, 264 A.D.2d 714, 716 (N.Y. App. Div. 1999) ("Corporate officers may be held personally liable for torts committed in the performance of their corporate duties.").

    **2.**  **Breach of December 18, 2001 Agreement, Declaratory Judgment and Breach of Implied Covenant of Good Faith and Fair Dealing**

Landmark argues that Axis's claims for the breach of December 18, 2001 agreement (Count II) and breach of the implied covenant of good faith and fair dealing (Count VIII) are premised on Axis's fraud claim and therefore present no triable issues. Because I find that summary judgment is not appropriate on the fraud claim, I also decline to enter summary judgment with respect to Count II and Count VIII. Lastly, in bringing its fraud claim, Axis seeks the return of all funds held in the escrow account. Because Axis may prove it is entitled to funds in the escrow account at trial,

it may be appropriate to enter a declaratory judgment with respect to the escrow funds, and I will not enter summary judgment against on Axis on its declaratory judgment claim (Count III).

## IV.    CONCLUSION

For the foregoing reasons, I deny Landmark's motion for summary judgment to the extent it is based on Landmark's argument that Axis lacks capacity to sue. I also deny Landmark's motion to the extent it seeks summary judgment on Axis's claims for fraud, breach of the December 18, 2001 agreement, declaratory judgment, and breach of the implied covenant of good faith and fair dealing. I note that Landmark expressly declined to seek summary judgment on Axis's claim against Landmark for breach of the subcontract related to the Plainedge School District project. With Plaintiff agreeing that its claims for unjust enrichment, constructive trust, and breach of the "Yonkers' subcontract" have been rendered moot, I dismiss those claims.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AXIS CONSTRUCTION CORP.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **LANDMARK BUILDING** | : | |
| **SYSTEMS, INC., et al.,** | : | No. 02-3017 |
| **Defendants.** | : | |

# ORDER

    **AND NOW**, this _____ day of **March, 2003**, upon consideration of Defendant Landmark Building Systems, Inc.'s Motion for Summary Judgment on Plaintiff's Complaint, Plaintiff Axis Construction Corporation's response, and Defendant's reply thereto, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant's Motion for Summary Judgment (Document No. 35) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. By agreement, Counts IV, V, and VII of Plaintiff's Complaint are **DISMISSED** as moot.

    b. Defendant's Motion is **DENIED** in all other respects.

2. Plaintiff's claims set forth in Counts I, II, III, VI, and VIII of its Complaint shall proceed to trial.

**BY THE COURT:**

_____
**Berle M. Schiller, J.**